UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA


JOSEPH EARL SMITH,                                    CIVIL NO. 04-4749 (JRT/JSM)

     Petitioner,

v.                                                   REPORT AND RECOMMENDATION

LISA J.W. HOLLINGSWORTH, Warden,

     Respondent.


JANIE S. MAYERON, United States Magistrate Judge

     This matter is before the undersigned Magistrate Judge of the District Court on the Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [Docket No. 1]. Petitioner claims that the Bureau of Prisons ("BOP") has miscalculated the number of days of "good time credit" that he should receive, and that the BOP therefore intends to hold him in custody beyond his proper release date. Petitioner also filed a Motion to Stay Transfer of Petitioner Out of the Jurisdiction of the Eighth Circuit Prior to the Final Adjudication of the Instant Habeas Corpus [Docket No. 9]. Respondent has filed a Respondent's Response to Petitioner's Habeas Petition Pursuant to 28 U.S.C. § 2241 [Docket No. 4], contending that Petitioner failed to properly exhaust his administrative remedies prior to bringing his § 2241 petition, and in the alternative, has asked for dismissal of the petition on the grounds that release date has been correctly determined.

     The matter has been referred to this Court for a Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c).

## I.    BACKGROUND

     On August 17, 2002, Petitioner began serving his 75-month prison term for conspiracy

to distribute cocaine and marijuana. Petitioner is presently serving his sentence at the Federal Prison Camp (FPC) in Duluth, Minnesota, which houses minimum-security male offenders.

According to the BOP, Petitioner can earn a total of 294 days of good time credit, if he does not lose any such credit due to bad behavior. If he actually does earn all of those 294 days of good time credit, then his release date will be moved up to January 27, 2008. Petitioner disagrees with the BOP's calculations.

## II.   DISCUSSION

### A.   Petitioner's Exhaustion of Remedies

Respondent argued that Petitioner's habeas petition should be dismissed on the grounds that he has not exhausted his administrative remedies, and in fact deliberately bypassed the exhaustion requirement. Petitioner has admitted that he did not exhaust his administrative remedies, but claimed that he should be excused from complying with the exhaustion requirement as it would be futile, and that the Prisoner Litigation Reform Act does not require him to exhaust his administrative remedies before proceeding to court.

The exhaustion requirement can be judicially or statutorily created. If created by statute, exhaustion requirements must be enforced by the courts. See Coit Independence Joint Venture v. FSLIC, 489 U.S. 561, 579 (1989). "But where Congress has not clearly required exhaustion, sound judicial discretion governs." McCarthy v. Madigan, 503 U.S. 140, 144 (1992). In this case, judicial discretion governs because Congress has not required exhaustion for habeas petitions brought under § 2241. See Gonzales v. O'Connell, 355 F.3d 1010, 1016 (7th Cir. 2004) (citing James v. Walsh, 308 F.3d 162, 167 (2nd Cir. 2002)).

In order to determine whether Petitioner should be required to exhaust his administrative remedies, courts exercise their discretion by "balanc[ing] the interests of the

individual in retaining prompt access to a federal forum against countervailing institutional interests favoring exhaustion." McCarthy, 503 U.S. at 146. Generally, exhaustion is required because it both protects administrative agency authority and promotes judicial economy. Id. at 144-45. In McCarthy, however, the Supreme Court identified several possible exceptions to the general rule that exhaustion is required, one of which was "where the administrative body is shown to be biased or has otherwise predetermined the issue before it." Id. at 148. Here, the BOP has already determined the amount of good time credit Petitioner may receive, and has made it clear that it will not alter its calculation method.[1] As such, this case falls squarely within that exception.

Further, balancing favors Petitioner because waiver of the exhaustion requirement does not implicate the institutional interests protected by the general rule. First, the rule protects agency power by giving it "the opportunity to apply its expertise, exercise the discretion delegated to it by Congress, and correct its own alleged errors . . . ." United States v. Dico, Inc., 136 F.3d 572, 576 (8th Cir. 1998). Here, the BOP has had ample opportunity in past cases to both apply its expertise and exercise its discretion, and, assuming for the sake of argument that a mistake was made, has signaled that it will not correct it in this case.

Second, the rule promotes judicial economy by allowing the agency to fully develop a factual record for judicial review, as well as aid the court in understanding technical matters. Id. Neither rational is applicable here. The facts of this case are basic and undisputed, and the issue is one of statutory interpretation which is unaffected by any technical matters uniquely

---

[1]      The BOP has uniformly maintained that its method of calculating good credit time is proper. See cases cited infra, notes 4-6.

within the BOP's area of expertise.  All told, the institutional interests protected by the exhaustion requirement carry little to no weight in this case.

Therefore, because this case falls within one of the exceptions to the general rule articulated by the Supreme Court, and because balancing favors Petitioner's interests in having the issue promptly decided over the institutional interests protected by the exhaustion requirement, the Court will waive the exhaustion requirement and reach the merits of Petitioner's claim.

**B.   BOP's Implementation of the Good Time Credit Statute**

Congress has authorized the BOP to give federal prisoners time off their sentences, i.e., "good time credit," if they comply with prison regulations.  The statute authorizing the award of such good time credit, 18 U.S.C. § 3624(b)(1), provides:

> Subject to paragraph (2), prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations. Subject to paragraph (2), if the Bureau determines that, during that year, the prisoner has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of the prisoner's sentence or shall receive such lesser credit as the Bureau determines to be appropriate. ... [C]redit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence.. . .

Based on this statute, the BOP adopted a regulation pertaining to good time credit, which is set forth at 28 C.F.R. § 523.20.  The relevant portion of the regulation provides:

> Pursuant to 18 U.S.C. 3624(b), as in effect for offenses committed on or after November 1, 1987 but before April 26,

1996, an inmate earns 54 days credit toward service of sentence (good conduct time credit) for each year served. This amount is prorated when the time served by the inmate for the sentence during the year is less than a full year.

Both parties agree that an inmate can earn 54 days of good time credit per year, if he does not lose any such credit because of disciplinary infractions. However, the BOP contends that an inmate can earn only 54 days of good time credit for each year that he is <u>actually in prison</u>, while Petitioner contends that an inmate should get 54 days of good time credit for each year of the <u>sentence imposed</u> by the trial court judge in his criminal case.

According to the BOP's formula for calculating a prisoner's release date,[2] a prisoner is awarded 54 days of good time credit at the end of the first full year of his actual imprisonment, assuming he has not lost any good time credit for disciplinary reasons, and the prisoner's projected release date is then moved forward by 54 days. Thereafter, the same calculation is repeated each year on the anniversary of the commencement date of the prisoner's sentence-- 54 days of good time credit is awarded, and the prisoner's projected release date is advanced accordingly. When the BOP performs the last annual recalculation of a prisoner's release date, <u>i.e.</u>, when the prisoner gets to the point where he is less than a full year away from his projected release date, the final projected release date is calculated on a prorated basis as follows: 54 days per year is multiplied by the number of days remaining until the prisoner's currently projected release date. Thus, at the end of the day, under the BOP's formula, a well-behaved prisoner does not get 54 days of good time credit for each year of his original imposed sentence. Instead, he gets 54 days of good time credit for each full year that he actually serves, plus a proportionate number of days for the final fractional year that he

---

[2]     The method of calculation used by the BOP is found in the BOP Program Statement 5880.28.  <u>See</u> Declaration of Diane Frederiksen.

actually serves.  Applying the BOP's calculation formula to Petitioner's situation, Petitioner will receive 294 days of good time credit, and he is due to be released on January 27, 2008.

Petitioner claims that he is being shortchanged by the BOP's good time calculation formula that allows good time credit for time actually served.

### C.    Interpretation Of The Good Time Credit Statute

The resolution of this dispute between Petitioner and Respondent hinges on whether the phrase "term of imprisonment," as used in § 3624(b)(1), is clear on its face and means what Petitioner thinks it means, or whether that phrase is ambiguous and susceptible to the construction adopted and applied by the BOP.  If the statute is clear on its face, then it must be enforced as written.  If it is ambiguous, then this Court must determine whether the BOP's interpretation of the statute, as evinced in 28 C.F.R. § 523.20, is reasonable.  See Chevron v. U.S.A. Inc. v. Natural Resources Defense Council, 467 U.S. 837, 843 (1984).

### 1.    Whether the Statute is Ambiguous

Petitioner contends that "term of imprisonment" can mean only the sentence originally imposed by the trial court, and therefore, § 3624(b)(1) mandates that federal prisoners are eligible for 54 days of good time credit for each year of the sentence imposed.  Petitioner also contends that the BOP's interpretation of § 3624(b)(1) goes against Congress' intent to give prisoners 54 days of good time credit for each year of the sentence handed down.

Petitioner's reasoning is rejected.  First, the Eighth Circuit, relying on the Seventh Circuit's decision in White v. Scibana, 390 F.3d 997 (7th Cir. 2004)[3] and the Ninth Circuit's

---

[3]      In White, the Seventh Circuit reversed the District Court's decision (finding that "term of imprisonment" meant "sentence imposed") and held that "'[t]erm of imprisonment' can only mean sentence imposed when used in subsection (a) and in the eligibility language of subsection (b); . . .."  White, 390 F.3d at 1002.  The appellate court further found that

decision in <u>Pacheo-Camacho v. Hood</u>, 272 F.3d 1266 (9th Cir. 2001), has concluded that §

3624(b) "is ambiguous because it does not clearly indicate whether a prisoner's good time

credits are based on the time served in prison or the sentence imposed."  <u>James v. Outlaw</u>,

No. 04-2686, 2005 WL 677769 at *1 (8th Cir. March 24, 2005).[4]

Second, this Court rejects Petitioner's contention that the BOP's calculation of "good

conduct time" ignored Congress' intent when it enacted 18 U.S.C. § 3624.  <u>See</u> Petition, at

pp. 3, 8.  There is nothing in the legislative history of § 3624 to support a finding that Congress

specifically intended to reject calculating good time credit based on actual time served rather

than basing such credit in the term of imprisonment.  <u>See</u> <u>James v. Outlaw</u>, Civil No. 03-5476

(RHK/FLN), at 5-6 (finding that there was nothing in the legislative history of section 3624(b)

that clarified the meaning of "term of imprisonment") (citing <u>Pacheco-Camacho</u>, 272 F.3d at

1268), <u>aff'd on other grounds</u>, <u>James v. Outlaw</u>, No. 04-2686, 2005 WL 677769 (8th Cir.

March 24, 2005); <u>see also</u> <u>Sash v. Zenk</u>, 344 F. Supp.2d 376, 381 (E.D.N.Y. 2004) ("However,

after reviewing the components of the legislative history cited by the parties, it remains unclear

to this court whether Congress intended to alter or preserve the underlying basis for calculating

good time credits."); <u>Loeffler</u>, 2004 WL 2417805, at *5 (finding that the legislative history is of

---

"attributing the same meaning to the phrase when it is used in subsection (b) to describe how good-time credit is awarded is inconsistent with the retrospective year-end evaluation and award system the statute contemplates."  <u>Id.</u>  Given this inconsistency, the Seventh Circuit held that § 3624 is ambiguous because it "does not clearly indicate whether the fifty-four days' credit for good conduct for each year of the prisoner's 'term of imprisonment' is based on the sentence imposed or the time served in prison."  <u>Id.</u> at 1002-03.  After concluding that § 3624 was ambiguous, the court deferred to the BOP's "reasonable interpretation of the statute, which awards the credit for each year served in prison rather than each year of the sentence imposed."  <u>Id.</u> at 1003.

[4]    Similarly, since the Seventh Circuit's decision in <u>White</u>, the First Circuit Court of Appeals in <u>Perez-Olivo v. Chavez</u>, 394 F.3d 45 (1st Cir. 2005), concluded that "the phrase 'term of imprisonment' as used in § 3624(b) is ambiguous . . . ."  <u>Id.</u> at 52.

no help in analyzing the meaning of "term of imprisonment").

Based on the reasoning and authority of the cases cited above, this Court finds that the

phrase "term of imprisonment," as used in § 3624(b)(1), is ambiguous.[5]

### 2. Reasonableness of BOP's Interpretation of the Good Time Statute

Under the rule articulated in Chevron, if a federal statute is ambiguous on its face, and if

the federal agency responsible for the enforcement of that statute has adopted a reasonable

interpretation of the statute, then that interpretation must be accepted by the courts.  See

Norwest Bank Minnesota, Nat. Ass'n. v. Sween Corp., 118 F.3d 1255, 1259 (8th Cir. 1997)

---

[5]     This Court notes that nearly every other court that has analyzed § 3624(b)(1) has consistently concluded that the phrase "term of imprisonment," as used in that statute, is ambiguous.  See Whitfield v. Hollingsworth, Civil No. 04-2730 (PAM/JSM), 2004 WL 3049763, at *2 (D. Minn. Dec. 30, 2004); Miranda v. Hollingsworth, Civil No. 04-4265 (MJD/SRN) (D. Minn. Dec. 30, 2004) (adopting the Magistrate Judge's Report and Recommendation which finds "term of imprisonment" ambiguous); Jackson v. Ashcroft, 347 F.Supp.2d 924, 926 (D. Or. 2004) (finding that the meaning of the phrase "term of imprisonment" under § 3624(b) is ambiguous); Sash, 344 F.Supp.2d at 383 ("the language of § 3624(b) is ambiguous."); Loeffler v. Bureau of Prisons, No. 04 Civ. 4627 (GWG), 2004 WL 2417805, at * 4 (S.D.N.Y. Oct. 29, 2004) (concluding that "the meaning of 'term of imprisonment' cannot be determined based on consistent usage throughout the statute"); Graves v. Bledsoe, 334 F.Supp.2d 906, 908 (W.D. Va. 2004) (finding that "an ambiguity is apparent in the statute"); Pasciuti v. Drew, No. 9:04-CV-043(LEK), 2004 WL 1247813, at *5 (N.D.N.Y. June 2, 2004) (finding that "the phrase 'term of imprisonment,' as used in [§ 3624(b)(1)], is ambiguous"); Parks v. Anderson, Civil No. 03-3455 (JNE/SRN) (D. Minn. Jan. 14, 2004) (finding that "§ 3624(b)(1) is ambiguous because it does not clearly prescribe the manner in which a prisoner's good time credits should be prorated for the last partial year of his prison term"); Bush v. Anderson, Civil No. 03-3535 (RHK/JGL) (D. Minn. Nov. 24, 2003) (finding that § 3624(b)(1) "is not clear on what 'term of imprisonment' means"); Martinez v. Wendt, No. Civ.A. 303CV0826-L, 2003 WL 22724755, at *1 (N.D. Tex. Nov. 18, 2003) (finding that the statutory language is ambiguous); Harvey v. Joslin, No. 3:04-CV-1181-N, 2004 WL 2645550, at *3 (N.D. Tex. 2001) (Magistrate Judge's Report and Recommendation) (finding "the meaning of the statutory language ambiguous").  Only one other district court has ruled that the phrase is unambiguous.  See Williams v. Dewalt, ---F.Supp.2d ---, 2004 WL 30022300 at *6 (D. Md. Dec. 29, 2004).

("[i]t is well established that we must defer to the reasonable judgments of agencies on the meaning of ambiguous terms in statutes that they are charged with administering") (citing Chevron, 467 U.S. at 842-45).  Thus, in determining whether an agency's interpretation is reasonable, "the court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." Chevron, 467 U.S. 853, n.11.

Based on the Eighth Circuit's holding in James, this Court finds that the BOP's interpretation of the statute to be both reasonable and entitled to substantial deference under Chevron.  See James, 2005 WL 677769, at *1 (finding that "since the BOP regulation was adopted through the notice and comment procedure, it is entitled to deference" under Chevron).[6]  Thus, the Court rejects Petitioner's claim that the statute unambiguously

---

[6]      This Court notes that every court that has found § 3624(b)(1) to be ambiguous also accepted the BOP's interpretation of the statute.  See e.g., Perez-Olivo, 394 F.3d at 52-23 (finding that Congress implicitly charged the BOP with interpreting the statute in question, and that under Chevron their interpretation was reasonable); White, 390 F.3d at 1001,1003 (saying that "[t]he Bureau's interpretation of § 3624(b) is . . . entitled to full Chevron deference," and that the Court defers "to the Bureau's reasonable interpretation of the statute, which awards the credit for each year served in prison rather than each year of the sentence imposed"); Brown v. Hemingway, No. 02-1948 (6th Cir. 2002), 2002 WL 31845147, at *1 ("[t]he Bureau's interpretation [of § 3624(b)(1)] is reasonable in light of the statutory language"); Pacheco-Comacho, 272 F.3d at 1271 ("the meaning of the statutory language of section 3624(b) is at best ambiguous, and therefore we must defer to the reasonable interpretation adopted by the BOP"); Harvey, 2004 WL 2645550 at *3 ("Bureau of Prisons's interpretation of the statute is reasonable and is not effected to subvert the will of Congress."); Loeffler, 2004 WL 2417805 at *6 (because the BOP's interpretation of § 3624(b)(1) is not "arbitrary, capricious or manifestly contrary to the statute,... the court has no choice but to defer to the BOP's interpretation"); Graves, 334 F. Supp.2d at 908 ("the BOP's interpretation of § 3624(b)(1) is a reasonable one"); Pollard v. Buren, No. 4:04-CV-642 (N.D. Tex. 2004), 2004 WL 2645548 at *1 (finding that "the BOP's interpretation of § 3624(b) is reasonable and entitled to deference"); Moore v. Bureau of Prisons, No. 04-Civ.-5011 (GEL), 04-Civ-6159 (GEL), 04-Civ.-6915 (GEL) (S.D.N.Y. 2004) 2004 WL 2609589 at *1 (same).

contradicts the BOP's method of calculating good time credit.  Rather, § 3624(b)(1) is

ambiguous, and the Court must defer to the BOP's interpretation under <u>Chevron</u>. [7]

### D.    MOTION TO STAY TRANSFER

Defendant has requested that he not be transferred to a prison outside of the

jurisdiction of the Eighth Circuit pending the resolution of his Habeas proceeding.  At the

outset of his case, Petitioner was incarcerated at Federal Correctional Institution in Sandstone

Minnesota ("FCI Sandstone").   However, since the initiation of his action, Petitioner was

transferred from FCI Sandstone to FPC Duluth, making his motion to stay transfer moot.

### III.   CONCLUSION

For the reasons discussed above, the Court concludes that the BOP has properly

determined the number of days of good time credit that Petitioner should receive under

§ 3624(b)(1).  It will, therefore, be recommended that Petitioner's application for a writ of

---

[7]      Petitioner also argued that § 3624 is a penal statute and as such any ambiguities under the statue must be resolved in his favor under the rule of lenity.  <u>See</u> Petition at pp. 10-11. However, the rule of lenity is not applicable to resolving the ambiguity in § 3624.  <u>See</u> <u>Bush v. Anderson</u>, Civil No. 03-3535 (RHK/JGL) at pp. 7-9 ("'To the extent that there is any ambiguity in section 3624(b), the BOP has resolved it through a reasonable interpretation, and the rule of lenity does not apply.'") (quoting<u>Pecheco-Camacho</u>, 272 F.3d at 1272, citing<u>Lopez v. Davis</u>, 531 U.S. 230, 242 (2001)); <u>see</u> <u>also</u> <u>Babbitt v. Sweet Home Chapter of Communities</u>, 515 U.S. 687, 704 n. 18, (1995) ("We have never suggested that the rule of lenity should provide the standard for reviewing facial challenges to administrative regulations whenever the governing statute authorizes criminal enforcement.");  <u>James v. Outlaw</u>, Civil No. 03-5476 (RHK/FLN) at pp. 7-9 (finding that the policy rationales underlying the rule of lenity do not support its application in dealing with the ambiguity in § 3624);<u>Harvey</u>, 2004 WL 2645550 at *3 ("Since § 3624(b) is not concerned with crimes and their punishment, nor does it trigger the correct concerns, it is not a penal statute for purposes of the rule of lenity. Therefore, the Chevron doctrine applies, since § 3624 was adopted through the notice and comment procedure.") (citations omitted);<u>Sash</u>, 344 F.Supp.2d at 50 381-83 (rejecting the applicability of the rule of lenity as its relates to § 3624);  <u>Martinez</u>, 2003 WL 22456808 at *2 (finding that rule of lenity does not apply because § 3624 is not concerned with crimes and their

habeas corpus be denied, and this case be dismissed with prejudice. It also recommended that Petitioner's Motion to Stay Transfer of Petitioner Out of the Jurisdiction of the Eighth Circuit Prior to the Final Adjudication of the Instant Habeas Corpus be denied as moot.

## IV.   RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

IT IS HEREBY RECOMMENDED that:

1.    Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [Docket No. 1] be **DENIED**;

2.    Motion to Stay Transfer of Petitioner Out of the Jurisdiction of the Eighth Circuit Prior to the Final Adjudication of the Instant Habeas Corpus [Docket No. 9] be **DENIED** as moot; and

3.    This action be **DISMISSED WITH PREJUDICE**.


Dated:      May 19, 2005

s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge


Under D. Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **June 6, 2005** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of

punishment).

Appeals.